## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

DEBORAH LOKKE,                                    Civil No. 21-1137 (JRT/TNL)

                          Plaintiff,

v.                                       **MEMORANDUM OPINION AND ORDER
                                          GRANTING DEFENDANT'S MOTION FOR
ADESA MINNEAPOLIS,                        SUMMARY JUDGMENT**

                          Defendant.

---

Joseph Patrick Pope, Jr. and Kristin Longley, **LONGLEY & POPE LAW PLLC**, 100 North Sixth Street, Suite 630b, Minneapolis, MN 55403, for plaintiff.

Bradley K. Donnell, **MCAFEE & TAFT**, 211 North Robinson, Tenth Floor Two Leadership Square, Oklahoma City, OK 73102; Jack Zuger and Mark A. Solheim, **LARSON KING, LLP**, 30 East Seventh Street, Suite 2800, Saint Paul, MN 55101, for defendant.

Plaintiff Deborah Lokke brings this tort action against ADESA Minneapolis ("ADESA"), alleging negligence in the maintenance and supervision of its car lot that caused an injury in the course of her employment. ADESA has now moved for summary judgement because the action is barred by the exclusive remedy provision in the Minnesota Workers' Compensation Act ("MWCA") under the loaned servant doctrine. The Court will grant ADESA's motion because consent to an employment contract is implied as a matter of law in Minnesota for the purposes of the loaned servant doctrine

where the employment relationship is procured through a labor broker, such as the temporary employment agency that employed Lokke.  Accordingly, ADESA was a "special employer," and the workers' compensation exclusive remedy provision applies.

## BACKGROUND

### I.    FACTUAL BACKGROUND

Express Managed Services, LLC ("Express"), is a temporary staffing agency that furnishes its client organizations with workers based on the requisite skills and qualifications.  (Decl. Tracy Dilley ("Dilley Decl."), Ex. 2 ("TLA"), at 1, Sept. 30, 2022, Docket No. 38-2.)  Plaintiff Lokke was at all relevant times an employee of Express.  (Dilley Decl. ¶ 5, Sept. 30, 2022, Docket No. 38.)  ADESA is an operator of car auction facilities.  (Decl. David Claxton ("Claxton Decl.") ¶ 9, Sept. 30, 2022, Docket No. 37.)  In 2016, ADESA entered into a three-year Temporary Labor Agreement ("TLA") with Express, whereby Express would supply temporary workers to ADESA as needed.  (TLA at 1, 4, 8.)

Express provided Lokke to ADESA as a temporary employee in accordance with the TLA.  (Claxton Decl. ¶¶ 5, 8.)  On February 27, 2018, ADESA tasked Lokke with clearing snow and ice from vehicles in preparation for auction.  (Decl. Kaylin Schmidt ("Schmidt Decl."), Ex. 1, at 5–6, Sept. 30, 2022, Docket No. 36-1; *see also* Claxton Decl., Ex. 1, at 1, Sept. 30, 2022, Docket No. 37-1.)  While walking in the auction vehicle parking lot, Lokke slipped on a patch of ice and sustained injuries to her head, neck, tailbone, and back. (Schmidt Decl., Ex. 1, at 5–6; Claxton Decl. Ex. 1, at 1.)

Express and ADESA both maintained workers' compensation insurance coverage. (Dilley Decl., Ex. 1, Sept. 30, 2022, Docket No. 38-1; Claxton Decl. ¶ 7.)  The parties agree that the labor services performed by Lokke were under the control, direction, and supervision of ADESA.  (Pl.'s Mem. Opp. Summ. J. at 2, Jan. 9, 2023, Docket No. 43; Def.'s Mem. Supp. Summ. J. at 3, Sept. 30, 2022, Docket No. 35.)  Similarly, the parties do not dispute that the nature of the services Lokke performed were entirely related to the services that ADESA provides generally.  Specifically, Lokke was placed with ADESA "as a temporary employee driving and inspecting vehicles at ADESA's car auction facility."  (Pl.'s Mem. Opp. Summ. J. at 2; Def.'s Mem. Supp. Summ. J. at 3.)

Subsequent to the injury, Lokke filed a workers' compensation claim against Express, which settled in March 2021.  (Dilley Decl., Ex. 3 ("Stipulation for Settlement"), Sept. 30, 2022, Docket No. 38-2.)  In the settlement, Lokke stipulated to a "full, final, and complete settlement and satisfaction of any and all claims that [Lokke] may have, past, present, and future, for workers' compensation benefits . . . as a result of the personal injuries of on or about February 27, 2018."  (*Id.* at 4.)

Approximately two weeks after settlement of the workers' compensation claim, Lokke filed a complaint against ADESA in state court on the theory that ADESA negligently maintained and supervised its parking lot.  (*See generally* Compl., Apr. 30, 2021, Docket No. 1-1.)  ADESA timely removed the case to this Court.  (Notice of Removal, Apr. 30, 2021, Docket No. 1.).  After nearly fifteen months of discovery, ADESA moved for

summary judgment on September 30, 2022. (Mot. Summ. J., Sept. 30, 2022, Docket No. 33.)

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* at 252.

## II.     SUBJECT MATTER JURISDICTION

Neither party challenges the Court's jurisdiction, nonetheless, the Court must first resolve the threshold issue of whether it has subject matter jurisdiction.  28 U.S.C. § 1446(c)(2) provides that where removal is sought on the basis of diversity, the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy.  *Id.*  However, if the practice of the state from which the action is removed permits recovery of damages in excess of the amount demanded, then the defendant may assert in the notice of removal an amount in controversy that satisfies the jurisdictional threshold.  28 U.S.C. § 1446(c)(2)(A)(ii).  Minnesota Rule of Civil Procedure 8.01 requires that "if a recovery of money for unliquidated damages in an amount greater than $50,000 is demanded, the pleading shall state merely that recovery of reasonable damages in an amount greater than $50,000 is sought."  Minn. R. Civ. P. 8.01.

Lokke filed this action in Minnesota state court seeking relief in the form of damages "in an amount greater than Fifty Thousand Dollars ($50,000.00)."  (Compl. at 4.)  ADESA timely filed notice of removal and asserted that "[u]pon information and belief, Plaintiff is a claiming damages that exceed $75,000."  (Notice of Removal at 2.)  ADESA supports its assertion that Lokke is seeking damages that exceed $75,000 by pointing to Lokke's statement that she has incurred medical and chiropractic expenses, past and future loss of earnings and earning capacity, and physical and mental pain.  (*Id.*)  Lokke does not challenge ADESA's assertion that the amount in controversy will exceed the

$75,000 threshold.  Accordingly, because ADESA has adequately asserted an amount in controversy that satisfies the jurisdictional threshold in accordance with Minnesota law and because Lokke does not challenge this assertion, the Court finds that it has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1446(c)(2)(A)(ii).

## III.   WORKERS' COMPENSATION ACT EXCLUSIVE REMEDY

Lokke was employed by Express, a temporary staffing agency, who then placed Lokke with ADESA as a temporary worker to drive and inspect vehicles.  Following Lokke's injury, she filed a workers' compensation claim against Express, then filed a complaint against ADESA.  ADESA argues that Lokke's claim is barred by the exclusive remedy provision of the MWCA because it qualifies as a "special employer" under the loaned servant doctrine.  Lokke contends that this is instead a third-party premises liability case, not an employment-related claim.  Alternatively, Lokke argues that consent to a "special employer's" control is a necessary element under the loaned servant doctrine.

Under Minnesota law, the "workers' compensation system 'is based on a mutual renunciation of common law rights and defenses by employers and employees alike.'" *Mientsma v. Loram Maintenance of Way, Inc.*, 684 N.W.2d 434, 438 (Minn. 2004) (quoting Minn. Stat. § 176.001).  The MWCA provides that "[e]very employer is liable . . . to pay compensation in every case of personal injury . . . of an employee arising out of and in the course of employment without regard to the question of negligence."  Minn. Stat. § 176.021, subd. 1.   In exchange for the employer's statutory liability, workers'

compensation "is [the] exclusive [remedy] and in place of any other liability to such employee." Minn. Stat. § 176.031. Stated simply, when an employee is injured during the course of their employment, the employer is liable to compensate the injured employee, regardless of fault, under workers' compensation. The exclusive remedy provision of the MWCA bars all other remedies.

The loaned servant doctrine applies to cases arising under the MWCA and "allows an employee to be simultaneously in the general employment of one employer and in the special employment of another." *Danek v. Meldrum Mfg. & Engineering Co., Inc.,* 252 N.W.2d 255, 258 (Minn. 1977). Where the doctrine applies, the employee may assert their workers' compensation rights against either or both employers. *Id.* Three conditions must be met under the loaned servant doctrine. First, the employee contracted, either expressly or impliedly, to work for the special employer. Second, the work being performed by the employee is "essentially that of the special employer." *Id.* (quotation omitted). Third, "the special employer has the right to control the details of the work." *Id.* If all three conditions are met, "both employers are liable for work[ers'] compensation." *Id.*

Here, Lokke and ADESA dispute only the first condition—whether Lokke consented to a contract to work for ADESA. Lokke relies heavily on *Rademaker*, where the Minnesota Supreme Court held that employee consent was an essential element to finding that the employee actually contracted to work for a purported "special employer." *Rademaker v.*

*Archer Daniels Midland Co.*, 310 Minn. 240, 246–47 (Minn. 1976).  The court reasoned that an "apparent submission [to the special employer] may be nothing more than continued obedience to the general employer."  *Id.* at 246.  However, in *Rademaker*, the court noted in dicta that "it may be appropriate in labor broker cases . . . to infer the employee's consent to a special employment relationship as a matter of law."  *Id.* at 247.

One year later, the Minnesota Supreme Court took up the issue of consent in the context of labor brokers in *Danek*, 252 N.W.2d at 258.  The court held that consent to an employment contract with the special employer is implied as a matter of law in the context of temporary employment agencies.  *See generally id.* at 258–60 ("It has been uniformly established in other jurisdictions which have considered the elements of control and consent in labor-broker cases that the temporary worker does become the employee of the labor broker's customer.") (collecting cases).  The Eighth Circuit recently reinforced this interpretation of *Danek.  See Lundstrom v. Maguire Tank, Inc.,* 509 F.3d 864, 867 (8th Cir. 2007) (stating that implied consent "has been held to exist as a matter of law in only two or three situations in Minnesota . . . [t]he first is when a labor broker is the general employer").

Based on this precedent, controlling Minnesota law dictates that consent to an employment contract with a special employer is implied as a matter of law in the case of temporary employment agencies.  That is the nature of the employment relationship at issue here: Express is a labor broker who constituted the general employer, and thus

Lokke's consent to work for ADESA as a special employer is implied.  The loaned servant

doctrine therefore applies. Because Lokke already asserted her workers' compensation

rights (and recovered) against Express, her current action for damages against ADESA is

barred by the exclusive remedy provision under the MWCA.  The Court will therefore

grant ADESA's motion for summary judgement.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that ADESA's Motion for Summary Judgement [Docket No. 33] is

**GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 27, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Court